1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL WILLIAM GRESHAM,

11            Petitioner,              No. CIV S-07-2192 GEB GGH P

12        vs.

13   R.J. SUBIA, Warden,              ORDER &

14            Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17            Petitioner, a state prisoner proceeding pro se, has filed an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner pled nolo contendere to violations of Cal.

19   Penal Code § 288.5(A), engaging in continuous sexual abuse of a child, and § 288(A)

20   committing lewd acts with a child, and received a 22-year sentence in Sacramento County

21   Superior Court on 8/19/02.  Petition, p. 1; Respondent's Lodged Document1, abstract of

22   judgment.  Petitioner purports to raise five grounds in his challenge: 1) ineffective assistance of

23   counsel; 2) "illegal, improper plea and due process errors"; 3) "illegal and improper sentence; 4)

24   prosecutorial misconduct; 5) "transcripts destroyed and denied to indigent petitioner."  Petition,

25   pp. 2-7.

26   \\\\\

                                          1

1        Pending before the court is respondent's motion to dismiss as barred by the

2 AEDPA statute of limitations, filed on 2/01/08, to which petitioner filed an opposition on

3 3/07/08, and with the court's permission,[1] a supplemental opposition, on 4/15/08, to which

4 respondent filed a reply, on 5/14/08.[2]

5 Motion to Dismiss

6        The statute of limitations for federal habeas corpus petitions is set forth in 28

7 U.S.C. § 2244(d)(1):

8      A 1-year period of limitation shall apply to an application for a writ
     of habeas corpus by a person in custody pursuant to the judgment

9      of a State court.  The limitation period shall run from the latest of

10      (A) the date on which the judgment became final by the conclusion
     of direct review or the expiration of the time for seeking such

11      review;

12      (B) the date on which the impediment to filing an application
     created by State action in violation of the Constitution or laws of

13      the United States is removed, if the applicant was prevented from
     filing by such State action;

14

15      (C) the date on which the constitutional right asserted was initially
     recognized by the Supreme Court, if the right has been newly
     recognized by the Supreme Court and made retroactively

16      applicable to cases on collateral review; or

17      (D) the date on which the factual predicate of the claim or claims
     presented could have been discovered through the exercise of due

18      diligence.

19        Respondent and petitioner agree that petitioner filed no direct appeal.  Thus,

20 petitioner's conviction became final for AEDPA purposes on October 18, 2002.  Motion to

21 Dismiss (MTD), p. 3, citing Cal. Rule of Court 30.1, revised as 8.308; see also, Mendoza v.

22 Carey, 449 F.3d 1065, 1067 (9th Cir. 2006) (as to a conviction wherein a direct appeal is not filed,

23 judgment is not final until 60 days after conviction).  The one-year statute of limitations began to

24

25    [1] See Order, filed on 4/01/08.

26    [2] By the Order, filed on 4/01/08, respondent was granted until 5/19/08, to file a reply.

1  run the day after the date of final conviction/judgment, on October 19, 2002.   MTD, p. 3, citing

2  Patterson v. Stewart, 252 F.3d 1243, 1246 (9th Cir. 2001).  Therefore, petitioner had until

3  October 20, 2003, to file a timely federal petition.  MTD, p. 3 & n. 4, noting that although the

4  10/18/03 expiration date fell on a Saturday, the period expired on Monday, October 20, 2003,

5  The instant petition, filed on October 16, 2007, is untimely by nearly four years, according to

6  respondent, absent any applicable tolling.  MTD, p. 4.

7          Section 2244(d)(2) provides that the time during which a properly filed

8  application for State post-conviction or other collateral review with respect to the pertinent

9  judgment or claim is pending shall not be counted toward any period of limitation.  According to

10  respondent, petitioner filed four pro se post-conviction collateral challenges: 1) a Sacramento

11  County petition, filed on 10/18/05, denied on 3/28/06;[3] 2) a habeas petition in the Third District

12  Court of Appeal (DCA), filed on 9/26/06,[4] denied on 10/05/06; 3) a second habeas petition in the

13  Third DCA, filed on 12/05/06, denied on 12/14/06;[5] 4) a state supreme court habeas petition,

14  filed on 3/29/07, with a supplemental petition, filed on 4/06/07, denied on 9/12/07.  The instant

15  petition was filed, as noted, on 10/16/07.  MTD, p. 2, Resp. Lodged Docs 2-10.  Affording

16  petitioner the benefit of the mailbox rule,[6] the court will deem the petition filed on October 10,

17  2007, still nearly four years beyond the statutory deadline.  Both parties concede that petitioner's

18  filing was untimely under the statute and that statutory tolling is not applicable because of the

19  tardy state filings; thus, the only question before this court is whether petitioner is entitled to

20

21      [3] Respondent's Lodged Document 2 is a copy of sheet showing filing and disposition
    dates only of the habeas petition in Sacramento County Superior Court, and shows a denial on
22  both 12/22/05 and 3/28/06.

23      [4] Application of the mailbox rule (see footnote 6) would render this petition filed as of
    9/19/06.

24      [5] For the disposition of the second appellate court opinion, respondent submits Lodged
    Doc. 7, a copy of the docket for the filing/disposition dates.
25

26      [6] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988), a pro
    se prisoner filing is dated from the date the prisoner delivers it to prison authorities.

1   equitable tolling.

2   <u>Equitable Tolling</u>

3         In <u>Calderon v. U.S. District Court (Beeler)</u>, 128 F.3d 1283, 1288 (9th Cir. 1997),

4   <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Calderon v. U. S. District Court (Kelly)</u>, 163 F.3d 530 (9th Cir.

5   1998), itself abrogated by <u>Woodford v. Garceau</u>, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth

6   Circuit found that the statute of limitations could be equitably tolled if extraordinary

7   circumstances beyond a prisoner's control made it impossible to file the petition on time.   "In

8   addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the

9   failure to file a timely claim, equitable tolling may be appropriate.'" <u>Lott v. Mueller</u>**,** 304

10   F.3d 918, 922 (9th Cir. 2002), quoting <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999).

11         Equitable tolling will not be available in most cases because tolling should only

12   be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him

13   to file a petition on time.  <u>Beeler</u>, 128 F.3d at 1288-89.  As held in <u>Beeler</u>,  "[w]e have no doubt

14   that district judges will take seriously Congress's desire to accelerate the federal habeas process,

15   and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289.

16   "Mere excusable neglect" is insufficient as an extraordinary circumstance.  <u>Miller v. New Jersey</u>

17   <u>Dept. of Corrections</u>, 145 F.3d 616, 619 (3rd Cir. 1998).  Moreover, ignorance of the law does

18   not constitute such extraordinary circumstances.  <u>See</u> <u>Hughes v. Idaho State Bd. of Corrections</u>,

19   800 F.2d 905, 909 (9th Cir. 1986).

20         In the <u>Calderon (Beeler)</u> case, the Court of Appeals held that the district court

21   properly found equitable tolling to allow Beeler more time to file his petition.  Beeler's lead

22   counsel withdrew after accepting employment in another state, and much of the work he left

23   behind was not useable by replacement counsel – a turn of events over which the court found

24   Beeler had no control.  The Court of Appeals held that the district court properly found these

25   \\\\\

26   \\\\\

were "extraordinary circumstances" sufficient to toll the statute of limitations.[7]

The Ninth Circuit also found extraordinary circumstances in <u>Calderon v. U.S. Dist. Ct. For Cent. Dist. Of Ca. (Kelly)</u>, 163 F.3d 530 (9th Cir. 1998) (en banc).  The three reasons given which independently justified tolling were: a district court stay which prevented petitioner's counsel from filing a habeas petition, mental incompetency until a reasonable time after the court makes a competency determination, and the fact that petitioner did at one time have timely habeas proceedings pending which were mistakenly dismissed, not as a result of any doing by petitioner.  <u>Id.</u> at 541-42.  <u>See also</u> <u>Corjasso v. Ayers</u>, 278 F.3d 874 (9th Cir. 2002) (clerk's unjustified rejection of a petition justified partial tolling); <u>Miles v. Prunty</u>, 187 F.3d at 1107 (delay by prison in withdrawing funds from prisoner's trust account, preparing and mailing filing fee were circumstances beyond his control, qualifying him for equitable tolling); <u>Stillman v. Lamarque</u>, 319 F.3d 1199, 1202-03 (9th Cir. 2003) (equitable tolling permitted where litigation coordinator broke a promise to petitioner's counsel to return a signed petition for timely filing); <u>Spitsyn v. Moore</u>, 345 F.3d 796 (9th Cir. 2003) (sufficiently egregious misconduct by counsel, such as wholly deficient performance, may justify equitable tolling).

Conversely, in <u>U.S. v. Van Poyck</u>, 980 F. Supp. 1108, 1110-11 (C.D. Cal. 1997), the court found that a petitioner's circumstances were not extraordinary in the following circumstances: inability to obtain transcripts from court reporters, and general prison lockdowns preventing the prisoner's access to the library and a typewriter which were necessary to his motion.  <u>See also</u> <u>Frye v. Hickman</u>, 273 F.3d 1144, 1146 (9th Cir. 2001) (counsel's miscalculation of limitations period "and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling"); <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on incompetence of jailhouse lawyer not sufficient to justify cause to excuse procedural

---

[7]  <u>See also</u> <u>Baskin v. United States</u>, 998 F. Supp. 188 (D. Conn. 1998), wherein the court applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition for certiorari until thirteen months after the denial was entered.

1   default); <u>Turner v. Johnson</u>, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did

2   not toll statute); <u>Eisermann v. Penarosa</u>, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal

3   expertise does not qualify prisoner for equitable tolling); <u>Henderson v. Johnson</u>, 1 F.Supp.2d

4   650, 656 (N.D. Tex. 1998) (same); <u>Fadayiro v. United States</u>, 30 F.Supp.2d 772, 779-80 (D.N.J.

5   1998) (delay in receipt of transcripts does not justify equitable tolling).

6         "Generally, a litigant seeking equitable tolling bears the burden of establishing

7   two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

8   circumstance stood in his way."  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418, 12 S. Ct. 1807, 1814

9   (2005); <u>Miranda v. Castro</u>, 292 F.3d 1063, 1065 (9th Cir. 2002) (a habeas petitioner bears the

10   burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition).

11   "Equitable tolling is unavailable in most cases," and is only appropriate "if *extraordinary*

12   circumstances beyond a prisoner's control make it impossible to file a petition on time."

13   <u>Miranda</u>, <u>supra</u>, at 1066 (internal quotations/citations omitted [emphasis added in <u>Miranda</u>]).  A

14   petitioner must reach a "very high" threshold "to trigger equitable tolling [under AEDPA]...lest

15   the exceptions swallow the rule."  <u>Id</u>.

16         *Discussion*

17         In his opposition, as noted, petitioner does not take issue with the filing deadline

18   identified by respondent, October 20, 2003, but does aver that in August of 2003, he retained the

19   services of the Law Office of Russell P. Briesacker, Esq., and Daniel R. Nelson, CJS,<sup>8</sup> to

20   "conduct postconviction redress" via habeas corpus and any other avenue.  Opposition (Opp.),

21   pp. 3-4; Exhibit (Ex.) A, a partial copy of one page of a letter with a letterhead of "Daniel R.

22   Nelson, CJS Appeals Research & Associates," dated August 13, 2003, confirming the

23   terms/conditions of Nelson's services on behalf of petitioner, addressed to "Mrs. Dianne Huson,"

24   evidently petitioner's mother; Ex.  B, p. 3 of a copy of a document entitled "Dianne Huson

25

26        <sup>8</sup> This acronym apparently stands for "Criminal Jurisprudence Specialist."  See
petitioner's Ex. D to Opp.

1   Agreement," evidently signed by Daniel Nelson of Appeals Research & Assoc., as well as by

2   Dianne Huson, and dated August 13, 2003.  Petitioner states that Daniel Nelson drew up and

3   signed the contract, "representing Russell P. Briesacker, Esq.," and a retainer of $2500 was paid,

4   with the balance of $15,000.00 to be paid in full by October 2003.  Opp., p. 3, Ex. C, a partial,

5   undated (one-page) copy of an attorney-fee contract with the name of Russell Briesacker,

6   Attorney at Law, at to the top of the page, contracting with petitioner's parents "Diane [sic] and

7   Dave Huson," on petitioner's behalf, specifying a flat fee of $32,000.00 plus expenses, which

8   evidently incorporated a fee of  $15,000.00 for preparing, filing and seeking "to reopen"

9   petitioner's judgment and conviction at the Sacramento County Superior Court level, with an

10  additional $17,000 to be paid to appeal to "higher Appellate Court," should an adverse ruling

11  ensue.

12          Petitioner maintains that at the time, Briesacker was retained as his habeas

13  counsel, on August 13, 2003, there was "a full 67 days" remaining before the expiration of the

14  applicable October 20, 2003 deadline, and that both Briesacker and Nelson "were made aware of

15  all pertinent dates and limitations as they were hired to represent petition on post trial conviction

16  redress...."  Opp., p. 4.  Petitioner includes as Ex. D, a copy of a letter, dated August 14, 2003,

17  that he avers Attorney Briesacker faxed to Mule Creek State Prison "Legal Visiting," giving his

18  authorization for Daniel Nelson, Briesacker's "'Criminal Jurisprudence Specialist'" and "'private

19  in-house investigator'" to meet with petitioner "in my stead, and on behalf of my law firm."

20  Opp., p. 4, Ex. D.

21          Petitioner acknowledges that nothing was filed in his case until October 18, 2005,

22  far beyond the October 20, 2003, deadline, but states that he had entrusted to his retained lawyer,

23  as well as Nelson, "the very critical responsibility" of handling his petition prior to the deadline's

24  expiration.  Opp., p. 4.  Petitioner corrects respondent's representation that the initial petition was

25  filed pro se, asserting that after the 10/18/05 Sacramento Superior Court petition was

26  denied on 12/22/05, "instead of proceeding up the ladder" to the Third DCA, Briesacker and

1   Nelson re-submitted the identical petition to the same superior court a second time, which

2   received another denial on 3/28/06. Opp., pp. 4-5. Ex. E, first page of petition filed on 10/18/05.

3          Petitioner states that after the duplicate filings at the lower state court level he was

4   abandoned by his retained counsel and had to proceed pro se on appeal which he argues that he

5   did in a timely manner, contending that he should not be forced to lose his opportunity to proceed

6   as a result of specially retained counsel's errors in delaying the initial state court filing,

7   describing his efforts to contact the law firm via phone calls and written correspondence, only to

8   be led to different states. Opp., pp. 5, 7. Petitioner claims that his counsel and counsel's

9   assistant never intended to do the job for which they were retained, instead conning petitioner's

10  family out of more than $20,000.00 for filing a superior court petition more than two years late.

11  Id., Ex. E, containing a copy of a letter from the Washington State Bar Assoc., stating that

12  information apparently provided to them was being returned as their records did not show that

13  the names of the individuals about whom the presumed inquiry/complaint was made were

14  licensed in Washington; copies of four envelopes, one addressed to Briesacker & Nelson, dated

15  2004 (which does not show it was returned), one addressed to Briesacker at a crossed-out address

16  in Lincoln, CA, dated 10/2/06, marked return to sender, one addressed to Nelson care of

17  Briesacker at a post office box in Oak Harbor, Washington, dated 10/03/06, stamped return to

18  sender, and another also addressed to Nelson c/o Briesacker at a Sacramento, CA post office box,

19  dated 9/22/06, stamped returned to sender.

20         In his supplemental opposition, petitioner provides some further documentation to

21  show that "petitioner and his family have been scammed and abandoned by" Briesacker. Supp.

22  Opp., p. 2. He includes two exhibits: Ex. A, a three-and-a-half page motion from Briesacker,

23  directed to Judge Greta C. Fall in the Sacramento County Superior Court, entitled "Motion to

24  reopen and/or a motion for cause to set matter for hearing on petitioner's writ," signed and dated

25  February 26, 2006, with a certificate of service showing it was sent by priority mail by Daniel

26  Nelson on that date. Ex. B is a copy of an envelope from Briesacker at an Anaheim, CA address

post-marked Portland, Oregon, with a date of Feb. 25 (but no year); a hand written date of Feb

25, 2006, has been written on the envelope copy.  Petitioner includes the envelope in an effort to

show how and when the copy of the motion in Ex. A was mailed to him and to demonstrate the

discrepancy between the California return address imprinted on the envelope and the Portland,

OR postmark.  Supp. Opp., p. 1.

Respondent acknowledges that petitioner is correct that respondent did not

indicate that petitioner had been represented by counsel in the first state post-conviction action

but did note in his motion that the Sacramento County Superior Court had been unable to locate

anything beyond the court's docket for that action, and respondent has subsequently located a

copy of the first petition and has since lodged that filing as Documents 11-14.  Reply, n. 1.

Nevertheless, respondent argues that petitioner is not entitled to equitable tolling because once

the period for direct review expired, petitioner in seeking collateral review no longer had a

constitutional guarantee of effective assistance of counsel, citing, inter alia, Coleman v.

Thompson, 501 U.S. 722, 752, 111 S. Ct. 2546, 2566 (1991) ( as there is "no constitutional right

to an attorney in state postconviction proceedings....a petitioner cannot claim constitutionally

ineffective assistance of counsel in such proceedings.").  Reply, p. 3.  Respondent maintains that

errors made by counsel on collateral review warrant equitable tolling only in very limited

circumstances.  Id.  Moreover, respondent argues that petitioner's contention is not supported by

the record – noting the failure to provide complete documentation of the August 2003 Nelson

agreement or a complete copy of an executed attorney-client fee contract with Briesacker,

arguing that what portion was produced makes clear no obligation to provide legal services

absent a returned signed copy and a $15,000.00 deposit made and that no evidence of when or of

such payment was produced.  Reply, p. 4, citing Opp., Exs A-C.  Respondent questions the

intertwining of the services of Briesacker and Nelson, based on petitioner's failure to show when

Briesacker's retainer fee was paid, notwithstanding the evidence petitioner provides of a working

relationship between Briesacker and Nelson in the August 14, 2003,[9] letter from Briesacker to

Mule Creek State Prison authorizing Nelson to interview petitioner on Briesacker's behalf.

Reply, p. 5, citing Opp., Exs. A-D.  Respondent avers that since the limitations' period expired

on October 20, 2003, without equitable tolling for this period, before the first habeas was filed,

counsel's actions after that time are inconsequential.  Reply, p. 5.

While maintaining that counsel's activity beyond October 20, 2003, was of no

significance, respondent nevertheless attacks petitioner's argument that Briesacker and Nelson

abandoned him after the denial of the state superior court petition, pointing out that petitioner

nowhere states that an additional $17,000 was paid for the filing of a petition to the state court of

appeal, an additional fee spelled out in the portion of the contract provided, contending as well

that there might be some basis in logic for the filing of motion to re-open by counsel after the

initial denial of the state court petition.  Reply, pp. 5-6.

Respondent, conceding that egregious attorney conduct has been found to warrant

equitable tolling, nevertheless maintains that Nelson and Briesacker did not engage in deceptive

or egregious conduct, arguing that petitioner was not deceived into believing that his initial state

court petition had been filed in any other way or other time than when it was filed and that the

mail logs show eleven communications to petitioner from Briesacker or Nelson from 8/13/03

through 10/18/05, and twelve from petitioner to Briesacker or Nelson.  Reply, pp. 9-10, Lodged

Doc. No. 15.

In an effort to resolve some of the questions raised, short of an evidentiary

hearing, this court ordered an expansion of the record, pursuant to Rule 7 of the Rules Governing

Section 2254 Cases in the United States District Courts, directing petitioner's former habeas

counsel, Russell P. Briesacker, to provide documents for in camera review that are the record of

written correspondence/contacts within his possession between himself and petitioner and

---

[9] Incorrectly stated as having been dated *April* 14, 2003 by respondent in the reply.

himself and any party contracting for counsel's legal services on petitioner's behalf.  See Order

and Subpoena, filed on 7/24/08.  Mr. Briesacker has provided the documents to the court and the

court has conducted an in camera review.  While the court will direct that the documentation be

filed under seal to protect any substantive client confidences, there is no question that petitioner

has put the effectiveness of his representation by Briesacker and his non-attorney associate,

Daniel J. Nelson, at issue in the filing of any post-conviction state court habeas filing, and

petitioner is deemed to have waived the attorney-client privilege to the degree necessary to

resolve the question of his entitlement to equitable tolling.  Bittaker v. Woodford, 331 F.3d 715,

716 (9th Cir. 2003) ("It has long been the rule in the federal courts that, where a habeas petitioner

raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all

communications with his allegedly ineffective lawyer.  See, e.g., Wharton v. Calderon, 127 F.3d

1201, 1203 (9th Cir.1997); Tasby v. United States, 504 F.2d 332, 336 (8th Cir.1974); Laughner

v. United States, 373 F.2d 326, 327 (5th Cir.1967).")

The court sets forth the following record of correspondence:

8/13/03- An unsigned copy--agreement, dated both 8/13/03 and 8/12/03, of a fax from Nelson to petitioner's mother, confirming terms & conditions of Nelson's efforts, touting in general terms his past accomplishments--outlining the $2500 fee that must be paid before work is to begin.

8/13/03- Notwithstanding above, an unsigned copy of Nelson's letter to petitioner's mother, saying his first confirmed visiting date with petitioner is to be on 9/18/03 with a possible earlier date of 8/28/03.  Tells of intent to do research and interview petitioner's public defender; upon receipt of her check, he will send a receipt and will keep her informed.

8/14/03-Letter from Briesacker to Mule Creek State Prison (MCSP), authorizing Nelson to interview petitioner on Attorney Briesacker's behalf & touting Nelson's "CJS" credentials,[10] etc.

8/14/03-Briesacker to petitioner saying he has been reviewing petitioner's case with Nelson "for purposes of exploring a modification of your sentence"-seeks authorizations to get his records-tells petitioner to relay any questions through Nelson "for now" and that he, Briesacker, will visit "at the appropriate time."

---

[10] On the occasions when Nelson uses his own letterhead, he is self-styled as a "CJA" or "CJS," of "Appeals Research & Associates," further varyingly self-designated on his letterhead as a "Criminal Jurisprudence Specialist" or "Civil & Criminal Jurisprudence Specialist" or "Fed. Criminal Jurisprudence Specialist," or simply and most vaguely, as a "Jurisprudence Specialist."

8/14/03-Petitioner's authorization letter to Briesacker for his public defender to release files to Briesacker.

8/14/03- Briesacker's letter to assistant public defender who represented petitioner, for all records for petitioner's case.

***(The undersigned notes that as of 10/20/03, the AEDPA limitation period has expired**–and that nowhere is there any evidence that this was ever contemplated or considered by Briesacker and/or Nelson, and the only reference to it is **by petitioner** in a letter to Briesacker, dated 9/03/06 (see below)).*

11/11/03-Nelson letter to petitioner (on Briesacker letterhead)-apologizing for late response to petitioner's 10/19/03 letter (not included)-claiming an undefined serious illness, thanking petitioner for kind words that are "far and in-between" in "this field"; stating there is a "great deal of work yet to do" before petition is to be filed in the superior court because there needs to be "articulation of the law, application of the rules for the procedures to go forward and an overwhelming presentation of the evidence on the issues favoring your position." Expresses intention to keep petitioner updated, says there have been favorable state appellate decisions in the last week that are supportive on procedural issues for reopening a sentencing-says there will be a legal visit next week.

12/17/03- Petitioner's letter to Nelson, pleading for a visit from him so he can find out what's going on.

12/29/03-Letter to petitioner signed by Nelson on Briesacker letterhead - telling petitioner in non-specific terms of his herculean efforts on petitioner's behalf - saying he has been researching cases that the opposition might be using, telling petitioner that they would not visit him "on any pretense" so that "needful legal visitation" would not be jeopardized – tells petitioner "future is yet to be touched, seen, visited and lived."

1/15/04-Letter from Briesacker to petitioner's parents – talking about the possibility of certain strategic approaches and obstacles to same (privileged material deleted) – says he plans to see petitioner on 1/16/04 – outlines that "we" intend to proceed as laid out in October of 2003 showing the court how other sentences have varied with the same type of convictions with more serious overt acts – says if court will not rehear, would go to appellate court to have the lower court open case then back to superior court – also says if superior court does not rule favorably will proceed on appeal (seemingly controverting notion that he has not signed on for that).

1/20/04-Note to Nelson from petitioner's mother, saying that petitioner wants to see him to tell him something and saying that petitioner sounded better.

1/28/04- Letter from petitioner to Nelson about the circumstances of his case (privileged portion of communication deleted); petitioner asks for copy of "papers" he has signed.

2/06/04-Nelson letter to petitioner on Briesacker letterhead re: petitioner's 1/28/04 letter - saying he will visit in March, using obfuscating, turgid and ungrammatical language, mentions an unidentified similar case to petitioner's where an ineffective assistance of counsel (IAC) claim resulted in an overturned plea; states that copy of 8/14/03 authorization letter petitioner signed to release his documents from the public defender that petitioner asked for is enclosed.

2/26/04- Briesacker to MCSP requesting visit with petitioner on 3/6/04.

2/26/04- Briesacker to petitioner - telling him they have received lots of discovery documents re: his case and are reviewing – (privileged communication deleted) - plans to meet with Nelson to arrange visit for March 6.[th]

3/02/04-Nelson letter to petitioner's parents on Briesacker letterhead - explaining that since their 2/26/04 conversation, he and Briesacker have arranged to meet with petitioner on 3/06/04 - says he and Briesacker will spend 3 days together to view state's discovery, interviews, videotapes, police reports, very vague as to strategy, speculates on the possibility of a re-sentence to 12 instead of 22 years for petitioner, revising an earlier estimate of a 6-8 year revised sentence. Nelson repeatedly  refers to "statues," not statutes, throughout his correspondence generally. Mentions May instead of March in a later portion of the letter as the date of their visit with petitioner, having earlier said it would be in March.  Discourages the parents from access to the material that has been produced in discovery – but says he would do so with written authorization by petitioner.

Three undated letters: petitioner to Briesacker: one appearing to answer questions Briesacker had posed (privileged communication portion deleted); second letter saying that Nelson's letter had come to him opened through the regular mail because it was sent from an address in WA, which prison staff did not recognize, asking that the Anaheim address be used - also says his mother told him Nelson told her that "papers have been filed" but that "this is not the first time he has said this" – wants all copies of court filings and correspondence from the court sent to his mother, with "partial confirmations of everything" to be sent to him as per usual; and a third note asking for copies of the discovery they have and the investigative work Briesacker and Nelson have done.

3/23/04- Petitioner's letter to Briesacker saying he has not had a lot of time with Briesacker (privileged communication portion deleted).

7/14/04- Petitioner's letter to Nelson, saying that from the way he (Nelson) and Briesacker "ran out of our last visit and the amount of time that has gone by I'm beginning to think your [sic] afraid to come see me again." Demands not to be left in the dark.  Also mentions "the good news of Jesus Christ," but also underlines that Nelson not be afraid to come see him.

7/30/04-Nelson letter to petitioner on Briesacker letterhead, saying he just got petitioner's 7/15/04 letter because the firm had relocated to Seattle.  Trying to explain away not visiting him. Says they have a good plan for the case, without more.  Mentions spiritual path petitioner is on.

Undated letter to petitioner's parents from Nelson, apparently enclosing petitioner's correspondence "to us" and their response, saying he (Nelson) has relocated to Washington, his home state.  Says he has been "accepted to take the bar in this state" and is prepping for it, but assuring them that he and Briesacker will continue working together.  Says he will be in touch soon with the "good news" that petitioner's case has been filed.  Mentions that it is summer, but no other date.

10/20/04- Nelson letter to petitioner says enclosing two-page draft of petition "which we feel strongly confident that Mr. Briesacker is preparing and filing on your behalf, very soon."  (Not included in file submitted to this court).  Informing petitioner that "since our former and last visit, major difficulties arose in various places, on different plateaus of the judicial system which we firmly believe and felt would not have helped your cause."  These include the justice system's laboring under strikes and financial burdens, etc.  Letter meanders fairly pointlessly, talking of new legislators, etc.

12/10/04-Astonishing letter to petitioner signed by Nelson on Briesacker letterhead - claiming that they have explained to petitioner's mother and stepfather why, inter alia, "we felt *it was necessary not to have filed within a certain time period* we were pushing for, as we feel it would not have been productive overall"; moreover, Mr. Nelson assures petitioner that "Mr. Nelson is doing a tremendous job and his due diligence is above reproach in this case matter."  Also references an 11/08/04 letter to which petitioner responded – that letter not included here.  Hopes to alter the time that petitioner serves "tremendously" – staking most of their claim on IAC. (Emphasis added).

7/7/05-Yet another letter on Briesacker letterhead to petitioner signed by Nelson, setting forth to petitioner grounds for relief to be discussed by Briesacker and Nelson with petitioner.

7/7/05-Nelson letter to petitioner's parents - enclosing expense invoice, assuring them he does accept credit cards now, and stating that "bounded" brief of habeas petitioner final draft and exhibits to draft habeas petition are enclosed, saying more expense to be incurred.

9/21/05-Petitioner's letter to Briesacker complaining that he is in "total darkness" about status of his petition, and about the lack of communication and professionalism by Briesacker, i.e., that Briesacker has said he was going to see petitioner since December, 2004, but has kept putting it off with vague promises for future visits.

10/18/05 -Briesacker to petitioner - date on letter mistyped as "August 18, 2005"- telling petitioner the petition was filed that day, obviously meaning 10/18/05.

10/18/05-Letter to Briesacker from Nelson on Nelson's Vancouver, WA letterhead (Danny R., not Daniel R., Nelson on letterhead this time) telling Briesacker the petition was filed that day in Sacramento Superior Court.

10/?/05- Petitioner's letter to Briesacker re: 10/17/05 visit, complaining of obnoxious behavior by Nelson, noting Nelson has "no real credentials" and his ineptness, seeking not to have him involved, only Briesacker, his lawyer, from now on; tells Briesacker to quit worrying about his (petitioner's) safety because he is in the safest CDC yard, complaining that Briesacker never discusses details over the phone and also did not do so on in-person visit that he made to petitioner with Nelson, who kept interrupting anyway - says he signed without going over case details or petition and feels foolish for doing so.

11/16/05-Briesacker to petitioner's parents apparently enclosing copy of above - says he wants to know how to get along better with petitioner.

11/16/05-Briesacker to petitioner-re: problems petitioner having with Nelson - says willing to visit petitioner without Nelson, even though Briesacker relies "heavily" on Nelson's work but petitioner's mother will have to pay, although but Briesacker (magnanimously) says there will be no billable time just expenses incurred, resulting in net loss to him.

12/01/05- Brief cover letter from Briesacker to petitioner saying habeas corpus documents enclosed to petitioner at his request.

12/?/05- Petitioner's letter to Briesacker - says he has received habeas documents, noting errors, as well as the failure to include a complete return address, which resulted in the mail having been opened – says this is not the first time for such an "ethical lapse."

12/14/05-Petitioner's letter to Briesacker complaining that the legal material Briesacker sent to the courts had "numerous typos and a missing page," asking that the mistakes be corrected – he is hoping the copies he received are not what went to court; asking for status update.

12/28/05-Petitioner's letter to Briesacker – asking for copies of investigation findings; asking why the court sent him a copy of the denial of his habeas rather than going "through the proper channels"; complaining about the superior court decision at certain specific points; asking what Briesacker wants to do now and asking Briesacker to tell him (certain privileged material deleted).

2/22/06-Long letter from Briesacker to petitioner - taking umbrage from petitioner's recent letters to Briesacker, stating that certain state and federal laws have "dramatically changed" (giving no hint as to how) in the last year with "serious consequences" for petitioner, also referring to "statues" and saying "there isn't a better legal mind having the articulation in challenging the laws governing this particular type of case than Mr. Daniel Nelson."  (This actually sounds like a letter drafted by Nelson on Briesacker letterhead but this time with Briesacker's name typed in the signature line (unsigned copy)).[11]

2/22/06-Fax from Nelson to Briesacker saying clerk told him that habeas was denied and he did not know why – Nelson left message that Briesacker office never received notification/order since 10/18/05 petition filing - Nelson says he said petition deserves hearing – he is telling the attorney Briesacker that they are entitled to ask the court to reopen for failing to notice counsel and says they can file a "motion for cause" and reattach petition for "re-review"; Nelson says he is working on the motion and should have it done by the next day.

2/25/06-Note to Sacramento County Superior Court Judge Fall from Nelson apparently enclosing motion to re-open.

4/13/06-Briesacker to petitioner - informing petitioner that the petition to superior court was denied, enclosing decision - tells petitioner it's a standard denial with no sympathy from court for case, but Briesacker believes IAC claim valid – Briesacker expresses great disappointment in petitioner's attitude (privileged portion deleted).

9/3/06-Petitioner to Briesacker - petitioner says he told parents that Briesacker and Nelson have dropped him and his appeal, a position that does not square with conversation in 2 attorney visits involving all 3 and with which petitioner disagrees – petitioner says he does not have any files or records only an early rough draft of final writ – seeks "urgently" to be provided with all material, specifically the writ so he can go to state court of appeals "and preserve my right to interval tolling."  Petitioner states "as you know, there is the AEDPA"–*(the first and only reference to that time limitation referenced)*; petitioner is anxious to proceed "on appeal in a timely manner"

10/10/06-State Bar to Briesacker noting complaint about him by petitioner, contending his parents had paid Briesacker $20,000 to file a habeas writ in Aug. 2003; in Oct. 2005, writ was

---

[11] That this letter was most likely drafted by Nelson, rather than Briesacker, is supported not only by its telltale idiosyncratic phrasing, including deficient grammar/spelling, but also by Briesacker's admission in an 8/13/08 cover letter to the court, accompanying the documents submitted in response to the court's order: "[i]n reviewing this correspondence I note that some of the correspondence from Mr. Nelson also has my name in the signature area.  It is obvious, however, from the context that these were drafted by Mr. Nelson."

filed in Sacramento County Superior Court, which was re-filed and denied on 3/28/06; in April, 2006, Briesacker told petitioner he would pursue appeal to reverse petitioner conviction also asking if petitioner wanted him (Briesacker) or new counsel; when petitioner's parents contacted Briesacker to respond for petitioner; Briesacker said he had left CA and could do no more for petitioner; petitioner believes deadline for appeal has passed and Briesacker abandoned him. State Bar asks for response to Bar inquiry and accounting of fees to petitioner; State Bar also asks for measures Briesacker took to protect petitioner's interests if Briesacker is no longer representing petitioner – asking if parents or petitioner entitled to refund to so indicate.  Asks if Briesacker, subsequent to 4/13/06 letter, communicated with petitioner or parents to find out if petitioner wanted to appeal – State Bar wants response by 10/24/06 (14 days).

10/23/06- Briesacker to petitioner - says he is in receipt of request for files but "has reason to believe" request not coming from petitioner; says he has not abandoned petitioner, says he told petitioner he would provide him with 1-page notice of appeal form; wants petitioner to sign release form for legal files but also claims petitioner already has most of the items which were provided to parents.

10/23/06 - Fax from Briesacker to State Bar - seeks to justify self and fee – says he received $15,000 for filing of superior court habeas with $1545.22 for two prison visits (air travel, etc)- says unspecified additional sums paid to associate.  Fee did not cover appeal.

10/25/06- Petitioner to Briesacker noting this is his 3rd req for case file.

12/08/06 -Briesacker to petitioner - noting receipt of "additional request" for files, says he has already told petitioner that he will make files available to designated agent.

12/04/06-State Bar to Briesacker - advising Briesacker that petitioner complained about Briesacker not turning over his files and giving him 10 working days to make file available.

(All of below documents were marked cc: to State Bar)

1/10/07-Petitioner to Briesacker – says he has asked "repeatedly to no avail" for transcripts.

2/8/07- Briesacker notes "yet another request" from petitioner re: his files; he says that petitioner already has most of the file, and some he can't send to prison and says he has repeatedly informed him a designated agent can retrieve files.

2/15/07 - correspondence from Briesacker says that he is sending petitioner a copy of his file "excluding items that I am not allowed by statute to disclose," saying there may be duplication but not characterizing in any way what he cannot disclose.

As to question about transcript: in a letter dated 2/22/07, petitioner asks Briesacker to send him complete transcripts, which he says he has been most specific in asking him for – 4/19/07 response by Briesacker says he is sending petitioner the "one and only transcript in your case."

Respondent is correct that miscalculation of the limitations period amounts to

negligence of the type that generally does not warrant equitable tolling.  Reply, at 10-11, citing,

inter alia, <u>Lawrence v. Florida</u>, __ U.S. __, 127 S. Ct. 1079 (2007) ("[a]ttorney miscalculation is

simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.").  The court, however, finds that the expanded record of this case demonstrates actions and omissions far greater than an inadvertent limitations miscalculation.  The undersigned has noted elsewhere the somewhat puzzling tension and dichotomy in the evolution of equitable tolling precedent, whereby equitable tolling is not available to a petitioner whose attorney has been merely negligent, but is available for one who has been subjected to truly egregious attorney conduct, i.e., having a terrible attorney is better than having a good attorney who makes an infrequent mistake.  Notwithstanding, this court has little trouble in finding that, under Spitsyn v. Moore, petitioner should be granted equitable tolling for the entire period of Mr. Briesacker's purported representation of petitioner.  Spitsyn, supra, 345 F.3d at 800 ("where an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations." ).

In Spitsyn, the Ninth Circuit notes that "[d]etermining whether equitable tolling is warranted is a 'fact specific' inquiry."  345 F.3d at 799.  In this case, the facts reveal that Attorney Briesacker, while charging an exorbitant fee, apparently wholly abdicated his own obligations to petitioner, foisting his responsibilities onto an associate who ascribes to himself wholly specious titles, such as "criminal jurisprudence specialist," meaningless descriptions by which Briesacker himself refers to Nelson, which were nevertheless quite obviously intended to lend an air of legitimacy and expertise to an individual of, at best, questionable qualifications.  As egregious, non-attorney Nelson is permitted to sign his name to correspondence printed under Attorney Briesacker's letterhead.  It also appears that Nelson was largely, if not wholly, responsible for researching and composing the arguably deficient and indisputably error-filled[12] petition eventually filed on petitioner's behalf.  Conspicuous by its total absence is any reference

---

[12] That is, even a cursory review shows the filing to be replete with typographical and grammatical errors as well as odd, jarring phrasing.

1   whatever to the AEDPA statute of limitations, other than a reference by petitioner himself.

2   Briesacker makes no mention whatever of any time constraint for the filing of a federal petition,

3   and, in fact, at a point in 2004 when the AEDPA filing deadline had long since passed, his

4   evidently non-licensed associate represents to petitioner that he and Briesacker have determined

5   that filing his state superior court petition later still, rather than sooner, is the best course to

6   follow, no doubt meant to be couched as a strategic choice, rather than the poorly framed excuse

7   for inexcusable dilatoriness that it is.  While it is not within the purview of this court to cite

8   Briesacker's associate, Nelson, for the unauthorized practice of law, the undersigned feels no

9   compunction in flatly observing that the evidence shows that Attorney Briesacker was wholly

10  remiss in fulfilling his fiduciary obligations to his client, petitioner herein.

11          Respondent deduces the mail log entry for 4/17/06, indicates the time that

12  Briesacker "likely mailed" the 3/28/06 denial resulting from the motion to reopen (reply, p. 6,

13  lod. doc. no. 15), a logical conclusion, as the preceding entry for correspondence from Briesacker

14  is 3/06/06, which, of course, predates the denial.  The expanded record shows that 4/13/06 is the

15  date of the correspondence wherein Briesacker informed petitioner of the denial of the state

16  superior court petition, apparently enclosing the decision, following his (or more likely,

17  Nelson's) motion to re-open and re-file the petition.  Therefore, the court finds that petitioner is

18  entitled to equitable tolling for the entire period from 8/13/03, through the time that the decision

19  was rendered on the reopened motion in the state superior court until 4/17/06, the date in the mail

20  log entry likely indicating the date of receipt of the 4/13/06 correspondence.[13]

21          The closer question comes as to whether petitioner should be granted equitable

22  tolling for the period of time from 4/13/06, until petitioner pro se's 9/19/06 filing of a habeas

23

24          [13] The petition was evidently originally denied on 12/22/05 (Lodged Doc. No. 2), which
    neither Nelson or Briesacker took steps to confirm, apparently until 2/22/06, even though
    petitioner, in a communication to Briesacker, dated 12/28/05, asked him why the court had sent

25  him (petitioner) a copy of the denial of the petition rather than going "through the proper
    channels," i.e, serving it upon his counsel, and wherein he complains about specific points in the

26  superior court decision and asks how Briesacker intends to proceed (see log, above).

petition in the state court of appeal, denied on 10/05/06; 3) a second habeas petition in the Third

DCA, filed on 12/05/06, denied on 12/14/06;[14] 4) a state supreme court habeas petition, filed on

3/29/07, with a supplemental petition, filed on 4/06/07, denied on 9/12/07.  The instant petition

was filed, as noted, on 10/16/07.  MTD, p. 2, Resp. Lodged Docs 2-10.

        If equitable tolling is granted from 8/13/03 until 4/17/06, petitioner would still

have 67 days to run on the statute, which time would expire on about 6/23/06.  Petitioner's first

appeal court filing occurred some three months later, followed by a second state appellate court

filing two months after the denial of the first.[15]  Thereafter, the state supreme court petitioner

filed by petitioner pro se occurred some three months later.

        Respondent argues that to the extent petitioner contends that Briesacker and

Nelson abandoned him in not providing him with transcripts, that contention is undermined by

transcript copies petitioner attached to his second state habeas petition, filed 9/17/06, but

eliminated from subsequent state court petitions, filed on 12/05/06, and on 3/29/07, with a

supplemental filing on 4/06/07.  Reply, pp. 6-7, citing Lodged Docs. 4, 6, 8-10.  Respondent also

notes petitioner's mail log shows no correspondence from Nelson or Briesacker between 4/17/06,

and 10/26/06, which was a month after the filing of the second state court habeas petition, that is,

the first state court of appeal petition, filed on 9/26/06 (wherein the transcripts were attached).

Reply, pp. 6-7, Lodged Doc. No. 4 & No. 15.  Respondent asserts that petitioner's credibility is

placed in question by his omission of transcripts he had possessed at the time of the pro se filing

of his second habeas petition from his third and fourth petitions, and that petitioner was "clearly

in receipt of his transcripts by April 17, 2006, yet dawdled over five months before the second

state action," therefore displaying a lack of diligence.  Reply, p. 7, citing, inter alia, Gassler v.

---

[14] For the disposition of the second appellate court opinion, respondent submits Lodged Doc. 7, a copy of the docket for the filing/disposition dates.

[15] Lodged Doc. No. 5 indicates that the first appellate court petition, on 10/05/06, was "denied without prejudice to filing a new petition, including the prior ruling of the trial court."

1   Bruton, 255 F.3d 492 (8th Cir. 2001) for the proposition that equitable tolling is not available for

2   delays in getting transcripts where a petitioner waited five more months and the transcripts were

3   not a filing pre-condition to filing and there was no explanation of what claims could not have

4   made without them.  Respondent also avers that any errors raised by petitioner would have been

5   apparent during his trial proceedings.  Id.  Respondent further challenges petitioner's

6   representation that he was abandoned by Briesacker and Nelson, contending, inter alia, that

7   petitioner did not even attempt to correspond with them until 9/05/06, twelve days before he

8   dated his initial state appellate court petition, arguing that petitioner should not be awarded

9   equitable tolling for the days when no correspondence was attempted.  Reply, pp. 7-8, Lod. Doc.

10   No. 15, mail log.  Thus, respondent argues that petitioner should be held responsible for the delay

11   in filing his pro se state court appellate petition.  Reply, p. 8.  Respondent contends that the

12   second action was a verbatim copy of the first, the denial of which petitioner was aware of as of

13   April 17, 2006, and that petitioner evidently had a copy of the transcripts by then – thus, the

14   delay in filing the second state action was unreasonable.  Id.  Thus, according to respondent, even

15   if petitioner is permitted equitable tolling for the period of his counsel's delays, respondent

16   maintains that petitioner, who had 68[16] days of the statute to yet run when counsel was apparently

17   retained, he is not helped by having waited beyond that period of time to file the second action.

18   Reply, pp. 8-9.

19         While respondent is correct that petitioner bears responsibility for the timeliness

20   of his filings, the expanded record set forth above of petitioner's efforts to get results from his

21   putative counsel from the outset of Briesacker's representation until many months after this

22   individual had apparently ceased any effort whatever on petitioner's behalf, shows an arguably

23   diligent effort on petitioner's part to obtain the records he believed he needed to proceed.  In

24   particular, the 4/13/06 correspondence from Briesacker to petitioner leaves some doubt as to how

25

26         [16] By the petitioner's own reckoning, as noted above, petitioner had 67 days remaining.

1  petitioner might proceed in terms of Briesacker's involvement.  While the record above, which

2  Briesacker represents may not be the full record of correspondence and contacts (in an 8/13/08

3  cover letter to the court, accompanying the documents produced, suggesting that more material

4  may be obtained from Nelson), and the mail log indicates some gaps in petitioner's efforts to

5  communicate with his lawyer, the frustration and persistence of petitioner is sufficiently evident

6  to warrant application of equitable tolling for his own pro se filings, all of which occurred within

7  relatively short periods, including the one-month interval between the denial of his state supreme

8  court petition and the instant petition.  Respondent is correct that petitioner appended documents,

9  including transcripts, to his first state appellate court pro se petition (see lodged doc. no. 4), but

10  that in the filing to the state appellate court, he claims that he has been unable to retrieve his trial

11  and post trial transcripts.  Lodged Doc. No. 6.  In his state supreme court petition, he claims not

12  to have been able "to obtain his full and complete transcripts."  Lodged Doc. No. 8, p. 4(d)(2).

13  This court's review of the transcripts submitted with petitioner pro se's first state appellate court

14  petition confirms that petitioner appears to have had his transcripts at the time of filing his

15  petition on 9/26/06, but it is not clear precisely when petitioner obtained the transcripts he

16  submitted or from whom.  It does not appear that on the face of it that petitioner has

17  misrepresented that he did not have all of his transcripts and his communication with Briesacker

18  indicates that petitioner well might not have had access to his complete transcripts until after

19  4/19/07.

20           In light of the above, this court finds that respondent's motion to dismiss should

21  be denied.

22           Accordingly, IT IS ORDERED that the record is expanded, pursuant to Rule 7 of

23  the Rules Governing Section 2254 Cases, to include the documents produced in response to this

24  court's order and subpoena, filed on 7/24/08 (#22), which documents must be filed under seal in

25  the docket of this case.

26  \\\\\

1    IT IS RECOMMENDED that respondent's 2/01/08 (#11), motion to dismiss the

2  petition as barred by the AEDPA statute of limitations be denied and that, within 30 days of

3  adoption of these findings and recommendations should that occur, respondent be directed to file

4  an answer.

5    These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7  days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: 09/03/08

     /s/ Gregory G. Hollows
14  _____

15     GREGORY G. HOLLOWS
       UNITED STATES MAGISTRATE JUDGE

16  GGH:009
    gres2192.mtd

17

18

19

20

21

22

23

24

25

26