IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL WILLIAM GRESHAM,

Petitioner,

vs.

MICHAEL MARTEL, Warden, Mule
Creek State Prison,

Respondent.

No. 2:07-cv-02192-JWS

MEMORANDUM DECISION

Petitioner Michael William Gresham, a state prisoner appearing through counsel,[1] has

filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Gresham is currently in the

custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule

Creek State Prison. Respondent has answered, and Gresham has replied. Respondent has also

filed a response to the traverse objecting to additional facts contained in the traverse.

## I. BACKGROUND/PRIOR PROCEEDING

Following the entry of a *nolo contendere* plea, Gresham was convicted in the Sacramento

County Superior Court on an amended complaint of one count each of Engaging in Sex Acts

with a Child (Cal. Penal Code § 288.5(a)) and Engaging in Lewd Acts with a Child (Cal. Penal

Code § 288(a)).[2] On August 18, 2002, in accordance with the plea agreement, the Sacramento

---

[1] Gresham filed his petition *pro se.* The court appointed counsel, and the traverse was filed on
Gresham's behalf by counsel.

[2] One count each of Rape of a Child Under the Age of 14 (Cal. Pen. Code § 269(a)(1)) and
Sodomy of a Child Under the Age of 14 (Cal. Pen. Code § 269(a)) were dismissed.

Superior Court sentenced Gresham to the upper term of 16 years on the § 288.5(a) conviction and the mid-term of 6 years on the § 288(a) conviction, to be served consecutively, for an aggregate prison term of 22 years plus restitution. Gresham did not appeal his conviction.

Gresham filed a petition for habeas corpus relief in the Sacramento Superior Court on October 18, 2005, which was denied in an unpublished reasoned decision on December 22, 2005. A subsequent motion to reopen the habeas proceeding was denied by the Sacramento County Superior Court on March 28, 2006. Gresham then filed successive petitions for habeas relief in the California Court of Appeal, Third Appellate District, and the California Supreme Court, which petitions were summarily denied on December 14, 2006, and September 12, 2007, respectively.[3] Gresham filed his petition in this court on October 10, 2007. Respondent filed a motion to dismiss the petition as untimely, which this court, finding that the time was equitably tolled, denied.[4]

## II. GROUNDS RAISED/DEFENSES

In his petition Gresham raises five grounds: (1) ineffective assistance of counsel; (2) guilty plea was not entered knowingly and voluntarily; (3) the sentence imposed was entered contrary to law; (4) prosecutorial misconduct; and (5) transcripts were destroyed precluding pursuit of an appeal. Respondent has raised no affirmative defense.[5]

---

[3] Neither California appellate court required a response be filed.

[4] Docket No. 46.

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

## III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme

---

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

Court precedent must be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

In applying this standard, this court reviews the last reasoned decision by the state court,[15] which in this case was that of the Sacramento County Superior Court.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this

---

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

presumption by clear and convincing evidence.[16]  This presumption applies to state trial courts

and appellate courts alike.[17]

## IV.  DISCUSSION

**A.  Traverse**.

In his traverse Gresham addresses only the response to the first ground—ineffective

assistance of counsel.  28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order
> to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as
> true except to the extent that the judge finds from the evidence that they are not
> true.

Under § 2248, where the is no denial of the Respondent's allegations in the answer, or the denial

is merely formal unsupported by an evidentiary basis, the court must accept Respondent's

allegations.[18]  Where a petitioner has not disputed a contention in the response and it does not

appear from the record before the court that the contention is erroneous, the court may accept

that contention.[19]  As they have not been traversed, Respondent's contentions to the second

through fifth grounds will be accepted, except to the extent that they are unsupported by the

record or are contrary to the law.

Gresham recites numerous facts in his traverse that were not alleged in the petition.

Gresham has also attached the affidavit of his mother, Diane Huson.  It also appears, as

Respondent contends, that numerous of these facts were not presented to the California courts in

---

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[18] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

[19] *Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

the petitions for habeas relief presented to those courts. This court does not ordinarily consider grounds raised or facts presented for the first time in the traverse. "The petition must: (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested. . . ."[20]

To the extent that Gresham is alleging a factual basis for his claims, other than those presented to the highest state court, as Respondent correctly notes, he runs afoul of the exhaustion requirement. Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[21] A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper *factual* and legal basis for the claim.[22] In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as *a statement of facts that entitle the petitioner to relief*.[23] The required level of explicitness is the same for *pro se* petitioners and petitioners who are represented by counsel.[24]

---

[20] Rules—Section 2254 Cases, Rule 2(c) (emphasis added); *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).

[21] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[22] *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir. 1999).

[23] *Gray v. Netherland,* 518 U.S. 152, 162-163 (1996).

[24] *Lyons v. Crawford,* 232 F.3d 666, 669 (9th Cir. 2000), *amended and superseded by Lyons v. Crawford*, 247 F.3d 904 (9th Cir. 2001).

**B. Merits**.

Ground 1:  Ineffective Assistance of Counsel.

Gresham contends that his counsel, an appointed public defender, was ineffective in that counsel failed to, *inter alia*:  (1) hire an investigator and properly investigate the facts of the case; (2) investigate his mental condition and obtain a psychological evaluation of his mental competency;  (3) advise him of his rights;  (4) inform him of his parents desire to obtain private counsel; (5) return his mother's calls; and (6) disclose any written plea agreement or discuss the plea agreement with him.  The Sacramento County Superior Court rejected Gresham's arguments, holding:

> Petitioner further alleges that he failed to receive effective assistance of counsel.
>
> In evaluating a claim of ineffective assistance of counsel, the court applies a two-part test:
>
> "[A] defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness ... under prevailing professional norms.'"  *(In re Harris* (1993) 5 Cal.4th 813, 832-833, *citing Strickland v. Washington* (1984) 466 U.S. 668 and *People v. Pope* (1979) 23 Cal.3d 412; see *also In re Scott* (2003) 29 Cal.4th 783, 811-812.)
>
> In the second part of the test, a petitioner "must also show prejudice flowing from counsel's performance or lack thereof. [cites omitted] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.' [cites omitted]"  *(Ibid.)*
>
> The *Strickland* standard has been applied to plea bargains.  (See *Hill v. Lockhart* (1985) 474 U.S. 53.)  In describing the "prejudice" analysis, the *Hill* court said:  "The ... 'prejudice' requirement ... focuses on whether counsel's constitutionally ineffective performance affected that outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial." *(Hill, supra,* 474 U.S. at p. 59.)

*Hill* further suggests that the test is not subjective. A petitioner must state facts indicating that his choice of going to trial would have been reasonable under the circumstances.

Finally, courts are advised that it is frequently easier to resolve an ineffective assistance claim by looking first at the issue of prejudice; if none is established, then it will be unnecessary to consider counsel's performance. *(In re Fields* (1990) 51 Cal.3d 1063, 1077.)

Petitioner entered a plea bargain to two of four counts. The other two counts, both violations of Penal Code §269, were dismissed. The dismissed counts each carried a sentence of 15 years to life. The allegations were rape and-sodomy of a young victim, and petitioner has not denied that he was sexually involved with the victim. Instead, he denies penetration. Only slight penetration is required, however, in a crime for which penetration is an issue. (See *People v. Karsa* (1982) 131 Cal. App. 3d 224, 231, disapproved on other grounds in *People v. Jones* (1988) 46 Cal. 3d 585.)

Thus, if counsel strongly urged petitioner to take a bargain that assured him that he would not receive a life sentence, that was good advice. Objectively, going to trial would not have been reasonable in petitioner's circumstances. Petitioner has failed to state facts that show prejudice in the entry of his plea.

At Gresham's change of plea hearing, the following colloquy took place between the

court, Gresham, and Gresham's counsel.

THE COURT: Defendant is present with Miss Allardyce; Miss Smith on behalf of the People.

MS. ALLARDYCE: Yes. Your honor at this time Mr. Gresham is going to enter a no contest pleas [*sic*]. He's going to be pleading to - -

MS. SMITH: Does the Court have the amended - -

THE COURT: Yes.

MS. SMITH: - - on that?
It should be Count Three I believe is a 288.5. I didn't receive a copy of the amended back. And I am guessing there's a Count Four with the victim named [name omitted].

Thank you.

[Counsel conferring]

MS. SMITH:  So he will be pleading to Count Three for upper term of sixteen years, and Count Four.  The agreement will be that will be mid term.  Not one-third the mid-term, but for the mid-term of six years, to be a total of twenty-two-year stipulated sentence.

THE COURT:  We're referring this to probation or not?

MS.  ALLARDYCE:    No, we're not, Your Honor.  Its's going to be a stipulated term, be we would like sentencing on August 19th.

THE COURT:  Mr. Gresham, is that what you are prepared to do, plead to one count of engaging in three or more acts of substantial sexual conduct with [name omitted], who was under the age of fourteen, and a separate count of lewd lascivious conduct upon the body of a child, [name omitted], under the age of fourteen?

THE DEFENDANT:  Yes ma'am.

THE COURT:  Do you understand these are both serious felonies; you will have two strikes on your record after today; you would be facing life if you commit another felony?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  In addition, you will have to serve eighty-five percent of your time?
Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Counsel have you discussed with him the elements of all of these charges, the possible defenses he may have, his constitutional rights, and the direct consequences of his plea?

MS.  ALLARDYCE: Yes, I have.

THE COURT:  Are you satisfied he understands all of those things?

MS.  ALLARDYCE:  Yes.

THE COURT:  May I hear the factual basis?

MS. SMITH:  As relates to Count Three, in the County of Sacramento, between September 18th, 1998, and June 8th, 2002, the defendant did unlawfully engage in three and more acts of substantial sexual conduct as defined in Penal Code 1203.066 subdivision (b), and three or more acts in violation of 288 of the Penal Code with [name omitted], a child under the age of fourteen years, while he resided with and had recurring access to [name omitted].

As to Count Four, in Sacramento County, between September 6, 1999, and September 6, 2001, the defendant did violate section 288(a) of the Penal Code by willfully, unlawfully, and lewdly committing a lewd and lascivious act on the body of [name omitted], a child under the age of fourteen years, with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of the defendant and the said child.  That was by digital penetration.

THE COURT:  Miss Allardyce, do you wish to be heard about the factual basis for the plea?

MS. ALLARDYCE:  No, Your Honor.

THE COURT:  Following a prison commitment of twenty-two years, you will be subject to parole supervision for up to five years.
Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  The Court will assess a restitution fine and order that could be taken out of in-prison earnings.  A matching fine will be stayed pending any violations of parole.  And you will be ordered to pay restitution in an amount to be determined.
Do you understand and agree to that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You will be required to register as a convicted sex offender with the police or sheriff in any city of county which you live?
Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If its not already done so, the Court will order you to submit to a blood test.
Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you are currently on probation or parole, those matters could be violated as a result of your plea, and you could be sentenced to the maximum on a violation.
Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Before you enter your plea, you must give up certain rights.
You have a right to a preliminary hearing.
Do you understand and give up that right?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You have the right to a jury trial.
Do you understand and give up that right?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Counsel, join in the waivers?

MS. ALLARDYCE:  Yes, Honor.

THE COURT:  You have the right to see and hear witnesses against you testify under oath and have your attorney question the witness.
Do you understand and give up that right?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You have the right to remain silent and not incriminate yourself.
Do you understand and give up that right?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You have the right to present a defense, to present evidence and witnesses and testify on your own behalf.
Do you understand - -

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand and give up that right?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Have you or anybody else been threatened in any way in order to get you to plead?

THE DEFENDANT:  Not really, no.

THE COURT:  Well, not really?

THE DEFENDANT:  No.  No.

THE COURT:  Are you currently under the influence of any alcohol, drug, narcotic or medication?

THE DEFENDANT:  No.

THE COURT:  Other than what has been said here in open court, have you been promised anything else?

THE DEFENDANT:  No.

THE COURT:  Before you enter your plea, do you have any questions about what you're doing?

THE DEFENDANT:  No.

THE COURT:  You are charged in Count Three in the amended Complaint with a felony violation of 288.5(a), engaging in three or more acts of substantial conduct with a child under the age of fourteen.
To the charge, what is your plea?

THE DEFENDANT:  No contest.

THE COURT:  You're charged in Count Four with committing a lewd and lascivious act upon the body of a child, [name omitted],  under the age of fourteen.
To the charge, what is your plea?

THE DEFENDANT:  No contest.

THE COURT:  Do you understand that your no contest pleas have the same effect as pleas of guilty?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  They can be used against you in civil proceedings arising out of these events.
Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Are you pleading today freely and voluntarily?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Did we make the announcement about phones?

MR.  MARCOLINI:  I apologize, Your Honor.

THE COURT:  Mr. Gresham, have you fully discussed the case with your attorney?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I'll find there is a factual basis for the plea, the plea and waivers were made knowingly, intelligently and voluntarily.
Counts One and Two are dismissed in the interests of justice.
Do you waive a referral to probation and time for judgement and sentence?

MS. ALLARDYCE:  We do, Your honor.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[25]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[26]  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for

---

[25] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[26] *Id*.

counsel's ineffectiveness, the result would have been different.[27]  An analysis that focuses

"solely on mere outcome determination, without attention to whether the result of the proceeding

was fundamentally unfair or unreliable, is defective."[28]

While judicial inquiry into counsel's performance under *Strickland* must be highly

deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[29]

"Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair

trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to

retrial."[30]  In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[31]

---

[27] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[28] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*., 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[29] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[30] *Id.* at 382.

[31] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S.Ct.1411, 1420 (2009).

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[32]

The United States Supreme Court has said that counsel need not undertake exhaustive witness investigation.  The question is not "what is prudent or appropriate, but only what is constitutionally compelled."[33]  While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[34]  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[35]

Gresham appears to fault counsel's lack of investigation in two respects:  (1) the facts of the case and (2) his mental competence.  Gresham has not set forth what "facts" counsel would have discovered that would cast doubt upon his guilt or support any potential defense.  Counsel stated in the plea colloquy, without objection from Gresham, that she had discussed the elements of all of these charges, the possible defenses he may have had, his constitutional rights, and the direct consequences of his plea.  Gresham also affirmatively acknowledged that counsel had

---

[32] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

[33] *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

[34] *Strickland*, 466 U.S. at 690.

[35] *Id*. at 690–91.

discussed the case with him.[36]  It is also evident from the plea colloquy that Gresham was aware

of his rights and that those rights were being surrendered by entry of the *nolo* plea.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea]
> hearing, as well as any findings made by the judge accepting the plea, constitute a
> formidable barrier in any subsequent collateral proceedings.  Solemn declarations
> in open court carry a strong presumption of verity.  The subsequent presentation
> of conclusory allegations unsupported by specifics is subject to summary
> dismissal, as are contentions that in the face of the record are wholly incredible.[37]

With respect to his mental competence, the Sacramento County Superior Court, in

response to his claim that the court itself should have done more to ascertain his competence,

held:

> [Gresham] finally alleges that the court should have done more to make
> certain that he knew what he was doing when he entered the plea.  This also is not
> true.  The court made the required inquiries.  When asked if he or anyone else had
> been threatened to get him to enter the plea, [Gresham] responded "not really."
> The court then questioned, "Not really?"  [Gresham] responded, "No, no."  In this
> exchange, [Gresham] does not seem to be confused or incapable of expressing
> himself; nor was the court failing to address [Gresham's] responses.

Gresham contends the record shows he was depressed and unable to cope with the reality

that confronted him, in a state of shock, confusion, and overwhelmingly suicidal.  This is based

upon the fact that the time of his arrest on June 8, 2002, he was taken by the arresting officers to

the Sacramento County Health Facility for this own safety.[38]  Thus, according to Gresham, his

competency to enter a plea on July 22, 2002, was questionable.  Although it is admittedly a cold

---

[36] In his petition, Gresham refers to questionable or doctored recordings.  Gresham does not describe what the defects in the recordings are, let alone any evidence of such defects.

[37] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citing *Marichoba v. United States*, 368 U.S. 487, 495-96 (1962)).

[38] Gresham also contends his mother was concerned about his mental condition and expressed that concern to counsel.  The affidavit of the mother, however, indicates this concern was not communicated to counsel until after Gresham had entered his plea.

record, there is nothing in the transcript of the plea colloquy that even hints that Gresham was not fully coherent and competent at the time he changed his plea.  There is no indication in that colloquy that the court sensed any basis for suspecting Gresham was incapable of comprehending or understanding the proceedings or the consequences of his plea  Whatever Gresham's mental state may have been more than a month prior to the change of plea, there is no evidence in the record that, at the time he entered his *nolo contendere* plea, he was not fully competent.

This Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[39] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*.  Gresham has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  In particular, Gresham has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  He is not entitled to relief on his first ground.

Ground 2:  Plea Involuntary.

---

[39] 28 U.S.C. § 2254(d).

Gresham contends that his plea was coerced, entered involuntarily without his knowledge and appreciation of its consequences. Gresham further contends that the agreement was not reduced to writing and was ambiguous. Under California law, a *nolo contendere* plea to a felony has the same legal effect as a guilty plea.[40] Accordingly, the court analyzes this issue under the standards applied to guilty pleas.

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[41] It is in this light that this Court must view each of Gresham's claims.

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.[42]

Gresham, however, faces a high hurdle in seeking to overturn a guilty plea on collateral review. As the Supreme Court held in *Mabry v. Johnson*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange. It is only when the consensual character of the plea is called into question that the validity

---

[40] Cal. Pen. Code § 1016.

[41] *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[42] *United States v. Boce*, 488 U.S. 563, 569 (1989).

of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[43]

Twenty years later the Supreme Court explained in *Iowa v. Tovar*:

> This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary:  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances- even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original).  We similarly observed in *Patterson:* "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[44]

The court has determined that counsel was not ineffective.  Accordingly, the plea cannot be overturned on that basis.  At the plea colloquy, Gresham stated he was entering his plea freely and voluntarily, understood the charges against him, had discussed the case with his attorney, and admitted the factual basis for the charges.  In addition, this court is not unmindful of the fact that the trial judge in this case specifically found that the plea was entered "knowingly, intelligently, and voluntarily"; a factual finding that Gresham has not overcome by clear and

---

[43] *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted), *disapproved on other grounds in Puckett v. United States*, 556 U.S. ___, 129 S. Ct. 1423, 1430 n.1 (2009).

[44] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis in the original).

convincing evidence.  In this case, Gresham presents nothing more than unsupported conclusory allegations.  These are trumped by the declarations made in open court at the plea colloquy.[45]

There is no constitutional requirement that a plea agreement be reduced to writing.  As for the terms, it was clear that the stipulated agreement was for the upper term of 16 years on Count Three and the mid-term, not one-third of the mid-term, on Count Four.  Gresham is not entitled to relief on his second ground.

Ground 3:  Improper Sentence.

Gresham contends it was improper to sentence him to the upper term of 16 years on the § 288.5(a) charge because there was no finding of aggravating circumstances as required under Cal. Penal Code § 1170.1(a).  The Sacramento County Superior Court rejected Gresham's argument, holding:

> [Gresham] argues that the court was required to state reasons for imposing the upper term when it sentenced him.  This is incorrect.  When the court sentences pursuant to a plea bargain and the upper term is required as part of the plea, "the court, in stating its reasons for that sentence choice, need only give the bargain as its reason and need not give any other reason"  (*People v. Sutton* (1980) 113 Cal. App. 3d 162, 163.)

This is an issue of the proper application of state law beyond the purview of this court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[46]  A fundamental principle

---

[45] *Blackledge*, 431 U.S. at 73-74.

[46] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982) (federal court must accept that state courts correctly applied state laws); *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[47] On this issue, Gresham has failed to present a viable federal constitutional issue.

Gresham further argues that because the aggravating factors were not admitted by his guilty plea, imposition of the upper term of the § 288.5(a) conviction violated the requirements of *Blakely/Apprendi*.[48]  No California court reached Gresham's *Blakely/Apprendi* argument. When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[49]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[50]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[51]  Since there is no reasoned decision by any California court for this court to look to,

---

[47]*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

[48] *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[49] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[50] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[51] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

it examines the last state court decision, that of the California Supreme Court, and assumes that it determined there was no *Blakely*/*Apprendi* violation on the merits.

Under California law, "'[w]hen guilty or *nolo contendere* plea is entered in exchange for specified benefits such as dismissal of other counts or agreed maximum punishment, both parties, including the state, must abide by terms of agreement.'"[52] Also, entry of a guilty or *nolo contendere* plea under California law does not necessarily constitute a waiver of the right to appeal, unless waiver is explicitly a part of the agreement.[53]

In September 2002, when Gresham's conviction became final, under California's Determinate Sentencing Law ("DSL") as construed by the California Court in *People v. Black*, the upper term was the relevant statutory maximum.[54] In 2007 *Black I* was abrogated by the Supreme Court in *Cunningham v. California*, holding that the presumptive statutory maximum was the mid-term.[55] Thus, there are two questions which might be considered. First, whether *Cunningham*, decided five years after Gresham was sentenced, may be considered a "new rule" that cannot be applied retroactively under *Teague*.[56] Second, assuming that *Cunningham* may be applied to this case, did Gresham either admit the aggravating facts or, as contended by

---

[52] *See People v. Panizzon*, 913 P.2d 1061, 1068 (Cal. 1996) (quoting *People v. Walker* (1990) 54 Cal. 3d 1013, 1024, 1 Cal. Rptr. 2d 902, 810 P.2d 861).

[53] *Panizzon*, 913 P.2d at 1068.

[54] *People v. Black*, 113 P.3d 534, 543 (Cal. 2005), *judgment vacated and remanded sub nom. Black v. California*, 549 U.S. 1190 (2007) ("*Black I*") (the Supreme Court remanded for further consideration in light of *Cunningham*).

[55] *Cunningham v. California*, 549 U.S. 270, 288 (2007) (interestingly, *Cunningham* involved the same Penal Code section involved in this case, § 288.5(a)).

[56] *Teague v. Lane*, 489 U.S. 288 (1989).

Respondent, by agreeing to the imposition of the upper term waive his *Apprendi* rights.[57]  If the answer to either of these questions is affirmative, Gresham is not entitled to the relief requested. Because the second question admits of an easily determined affirmative answer, it is unnecessary to consider the first.

Assuming *arguendo* that *Cunningham* applies, Gresham is not entitled to relief.  He specifically entered a plea in a bargained-for exchange.  Gresham agreed to a certain sentence of 22 years, avoiding exposure to additional counts that carried indeterminate sentences of 15 years to life, which could have been imposed consecutively, for a potential aggregate sentence of 30 years to life, or longer.  The government, on the other hand, received the punishment it considered satisfactory and was relieved of the obligation to proceed to trial or otherwise prove the elements necessary to obtain that punishment.  In declining to remand for re-sentencing under *Booker*, one circuit court stated:[58]

> The plea agreement process permitted [Gresham] and the government to allocate risk, to obtain benefits, to achieve finality and to save resources.  This process is at the very center of the criminal justice system.  If either party were able to secure its benefits while making its obligations contingent, the utility of plea agreements would disappear."[59]

In this case, the government offered a sentence of the upper term on one count and the mid-term on a second count in exchange for dropping two other counts carrying significantly

---

[57] *See Blakely*, 542 U.S. at 310 (a defendant may waive his *Apprendi* rights); *United States v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005) (finding a defendant is bound by the terms of his plea agreement, declined to vitiate the sentencing terms of a bargained-for agreement because a subsequent favorable change in the law under *Booker-Ameline*).  The court notes at the outset that the fact Gresham did not *object* to the imposition of the upper term would not be considered a forfeiture of his argument under California law.  *See People v. Black*, 161 P.3d 1130, 1136 (Cal. 2007) ("*Black II*").

[58] *United States v. Booker*, 543 U.S. 220 (2005).

[59] *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005).

higher sentences. Gresham accepted that offer without condition or reservation. The government performed its part of the obligation, and it would be unfair to not compel Gresham to perform his part of the bargain, the *quid pro quo*.

Finally, given that Gresham stipulated to the imposition of the upper term sentence, *Blakely/Apprendi* is not implicated.[60] Consequently, this court cannot say that the assumed decision of the California Supreme Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[61] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Gresham's case within the scope of *Andrade-Williams-Schriro*. Gresham is not entitled to relief on the third ground.

Ground 4: Prosecutorial Misconduct.

Gresham contends that the prosecutor deceived him into pleading guilty to a felony charge where the best evidence the state could produce constituted a misdemeanor at best. Gresham further alleges that his conviction was obtained by a misstatement of the facts by the prosecutor. Gresham's conclusory statements are unsupported by any factual or legal argument. Gresham carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.[62] Consequently, Gresham is not entitled to relief under his fourth ground.

Ground 5: Denial of Transcript.

---

[60] *See United States v. Graham*, 466 F.3d 1234, 1240 (10th Cir. 2006) (holding that *Booker* is not implicated when a district court accepts a stipulated sentence under Fed. R. Crim. P. 11(c)(1)(C)

[61] 28 U.S.C. § 2254(d).

[62] *Silva*, 279 F.3d at 835; *see James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations unsupported by specific facts are insufficient to warrant habeas relief).

Gresham states that because documents, transcripts, and other evidence were disposed, he was unable to pursue an appeal. As Respondent notes, Gresham did not file a notice appeal, which would trigger the necessity for furnishing transcripts. Gresham does not challenge this contention in his traverse. Furthermore, Respondent has produced the record, which negates Gresham's allegation that it was destroyed. Gresham is not entitled to relief on his fifth ground.

## V. CONCLUSION AND ORDER

Gresham is not entitled to relief under any grounds raised in the petition. Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[63] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court will please final judgment accordingly.

Dated: February 19, 2010.

/s/ JOHN W. SEDWICK
United States District Judge

---

[63] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).